IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA,

v.  Criminal No. 3:14cr25-2

JOEL JUAN

## MEMORANDUM OPINION

This matter is before the Court on the GOVERNMENT'S MOTION TO COMPEL DISCLOSURE OF INFORMATION FROM FORMER DEFENSE COUNSEL (Docket No. 58). For the reasons set forth below, the motion will be granted.

### BACKGROUND FACTS

Joel Juan was arrested on a criminal complaint charging violations of 21 U.S.C. § 841(a)(1). Vaughan Jones was appointed counsel for Juan. Later, the grand jury returned an Indictment, and then, on April 1, 2014, the grand jury returned a three-count Superseding Indictment against Defendant Juan. Count One charged Juan with conspiracy to distribute marijuana and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B) and 841(b)(1)(d). Count Two charged Juan with possession with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B). Count Three charged Juan with possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(b)(1)(D).

On April 17, 2014, Juan was arraigned on the Superseding Indictment and the case was set to be tried to a jury on May 23, 2014.

Shortly after arraignment, Jones, on behalf of Juan, notified counsel for the Government that Juan had decided to enter a guilty plea to Count One of the Superseding Indictment and a proposed Plea Agreement ("Agreement") with supporting Statement of Facts ("Statement") was given to Jones. On April 29, the parties appeared before United States Magistrate Judge David J. Novak for entry of the guilty plea. Before the hearing Jones advised that Juan had decided not to enter a plea. The proceedings were adjourned; but, on May 12, Jones informed counsel for the Government that, upon reflection, Juan had decided to enter the agreed upon plea. The next day, both counsel and Juan executed the Agreement and Statement.

In paragraph one, the Agreement reads in part that "[t]he defendant agrees to plead guilty to count one of the pending superseding indictment." (Agreement ¶ 1.) In paragraph four, it provides in part that "[t]he defendant is satisfied that the defendant's attorney has rendered effective assistance." (Agreement ¶ 4.) In paragraph fourteen, it provides as follows:

14. **Breach of the Plea Agreement and Remedies**

    This agreement is effective when signed by the defendant, the defendant's attorney, and an attorney for the United States. . . . If the defendant withdraws from

2

> this agreement . . . or otherwise violates any provision of this agreement, then:
>
>> a. The United States will be released from its obligations under this agreement, . . .;
>> b. . . . and
>> c. <u>Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon</u> any information provided, or statements made, by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. <u>The defendant waives any right to claim that</u> statements made before or after the date of this agreement, including the statement of facts accompanying this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law.

(Agreement ¶ 14 (emphasis added).)

Below the signature of the attorney for the United States, Juan's signature appears following a paragraph that reads:

> Defendant's signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending superseding indictment. Further, I fully understand all rights with respect to Title 18, United States Code, Section 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

(Agreement at 9.)

Below Juan's signature, the signature of Jones appears following a paragraph that reads:

3

> Defendant's Counsel Signature: I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending superseding indictment. Further, I have reviewed Title 18, United States Code, Section 3553 and the Sentencing Guidelines Manual, and I have fully explained to the defendant the provisions that may apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

(Agreement at 9.) Additionally, the signatures of Juan and Jones appear on the Statement below paragraphs stating substantively the same attestations to understanding, careful review, and knowing and voluntary assent as are made in the Agreement. (Statement at 2-3.)

In the middle of a plea colloquy conducted by Magistrate Judge Novak, Juan stated that he had not been aware of the cocaine found in his vehicle at the time of his arrest. That statement, of course, was in direct conflict with Statement that Juan had signed. In that set of circumstances, Judge Novak rightly declined to take the plea and ended the hearing.

With the case then appearing to be headed for trial, the Government filed a Notice of Potential Conflict, Docket No. 35, detailing its concern that the anticipated dispute over the admissibility of the Statement associated with the abortive guilty plea would create a conflict of interest for Juan's counsel.[1] The

---

[1] Juan's counsel advised that he intended to seek admission of the aborted plea colloquy. Counsel for the Government apprehends that proposal likely would also necessitate hearing from Jones.

4

Court ordered a hearing on the matter, at which time Juan expressed a wish to be represented by new counsel free from any potential conflict of interest arising from the abortive guilty plea. The Court then appointed new counsel for Juan.

The Government filed a motion *in limine* to introduce the Statement into evidence at trial. See Docket No. 50. In turn, Juan filed, through his new counsel, a motion *in limine* to introduce the transcript of the abortive plea colloquy. See Docket No. 51. During the subsequent exchange of filings on those motions, Juan's new counsel raised the issue whether Juan had knowingly waived his exclusionary protections under Fed. R. Evid. 410 and Fed. R. Crim. P. 11(f), see Docket No. 52 at 1, and whether he knowingly and voluntarily executed the Agreement and the accompanying Statement. See Docket No. 51 at 4. These are the precise issues that the Government believed might create a conflict of interest with Juan's now-former counsel.

The Government believes that, "Information regarding [former counsel's] communications with Juan on all issues regarding his understanding of the plea documents is . . . critical to resolution of the government and defendant's motions [*in limine*]." Docket No. 58 at 2. In accordance with that view, the Government filed this motion to compel, and the Court has postponed hearing on the other motions *in limine* in order to resolve this threshold motion to compel testimony from Jones.

5

## DISCUSSION

Juan's chief argument in opposition to the motion to compel is that the communications between him and his former counsel are protected by the attorney-client privilege. "It is a well-settled principle of law that confidential conversations between a defendant and his counsel generally are protected by the attorney-client privilege, which affords the communications complete protection from disclosure." United States v. Lentz, 524 F.3d 501, 523 (4th Cir. 2008). In a federal criminal case such as this one, the Court must apply "the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience" in order to determine the extent of the privilege asserted. Fed. R. Evid. 501. The Fourth Circuit test for application of the attorney-client privilege states that:

> [T]he privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Lentz, 524 F.3d at 523 (quoting In Re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003)).

6

The proponent carries the burden of establishing the existence of the attorney-client relationship, the applicability of the privilege to the specific communication at issue, and the absence of waiver. In Re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003) (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)). In addition, because the privilege "impedes the full and free discovery of the truth," it should "be narrowly construed, and recognized only to the very limited extent that [ ] excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998) (internal quotations and citations omitted).

"The client [who] is the holder of the attorney-client privilege . . . can waive it either expressly, or through conduct." Hawkins, 148 F.3d at 384 n. 4 (citations omitted) (quoted in In Re Grand Jury Subpoena, 341 F.3d 331, 336 (4th Cir. 2003)). For the purposes of this motion, the only area of dispute between the parties is whether, because of positions taken in opposing the Government's effort to admit the Statement at trial, Juan has waived the attorney-client privilege and rendered his former counsel susceptible to a motion to compel.

The issue arose because Juan now claims that he "neither admitted to knowingly and intentionally committing the specific acts charged nor to knowingly and voluntarily agreeing to the

7

truth and accuracy of the facts set out in the Statement of Facts." Docket No. 51 at 4. He characterizes his state of mind as "utter confusion as to what he was admitting to on that date." Id. Curiously, Juan's brief does not offer an explanation for his failure to understand the Statement. But, he does say that he "has never alleged directly nor implied by his opposition to the government's efforts to introduce the Statement of Facts into evidence at trial that Mr. Jones was ineffective or guilty of misconduct in his representation of Juan." Docket No. 59 at 2. But, rather than identify a competing narrative that would explain his state of mind and actions, Juan merely offers the anodyne statement that, "The reality regarding the prior attorney-client relationship is colored more in shades of gray than in black and white." Id. Neither the disclaimer of an attack upon Jones nor the "shades of gray" bromide does little to discharge Juan's burden to show that the privilege has not been waived.

That analysis must begin with an understanding of what Juan is really saying. At base, he is asserting that Jones did not fully explain the meaning of either the Statement or paragraph 14 of the Agreement, but allowed Juan to execute those documents nonetheless. He also is saying that, at Jones' advice or at least with Jones' knowledge, Juan signed an attestation clause that was simply not true. Without question, that, at a minimum, calls into question Jones' performance of duty. It also means that Juan has

8

taken a position that involves very much what happened between himself and his lawyer. And, Juan proposes to rely on his version of those occurrences in opposing the admissibility of the Statement and in attempting to avoid the effect of paragraph 14 of the Agreement.

In so doing, he has impliedly waived the privilege insofar as it relates to the facts known by Jones that bear on whether Juan knowingly and voluntarily waived his rights under Fed. R. Evid. 410 and Fed. R. Crim. P. 11(f) and whether he knowing and voluntarily gave the statements in the Statement of Facts. Hunt v. Blackburn, 128 U.S. 464, 470-71 (1898). See also Farnsworth v. Sanford, 115 F.2d 375, 377 (5th Cir. 1940, cert denied, 313 U.S. 586, reh'g denied, 417 U.S. 708 (1941) (holding that a defendant could not invoke privilege to prevent his attorneys from testifying in rebuttal to his claim that his attorneys had not adequately advised him of his rights or the plea agreements terms); Laughner v. United States, 373 F.2d 326, 327 (5th Cir. 1967) (stating that a defendant alleging that his guilty plea had been improperly accepted as knowing and voluntary could not claim attorney-client privilege to keep his lawyer from testifying as it would "eliminate the one source of evidence likely to contradict [the defendant's] allegations."); Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974) ("When a client calls into public question he competence of his attorney, the privilege is waived."); United

9

States v. Butler, 167 F. Supp. 102 (E.D. Va. 1957), aff'd, 260 F.2d 574 (4th Cir. 1958)( "While the rule with respect to privileged communications between attorney and client should be zealously guarded, this privilege may be destroyed by the acts of the client in attacking the attorney on a charge of dereliction of duty.")

Those decisions reflect a longstanding consensus in the federal courts that a formal claim of ineffective assistance of counsel implicitly waives the attorney-client privilege. See Dunlap v. U.S., Case No. 4:11cv70082, 2011 WL 2693915, at *2 (D.S.C., July 12, 2011)(citing cases from the 6th, 8th, 9th, 10th, and 11th Circuits). The Supreme Court has even obliquely suggested the existence of such a waiver in the landmark case of Strickland v. Washington, 466 U.S. 668, 691 (1984) ("[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions.") No such formal claim has yet been asserted in this case.

However, various statements by other courts have more broadly described the trigger for a waiver as anything that might put the nature of the attorney's prior advice or the attorney-client relationship "at issue." See U.S. v. Pinson, 584 F.3d 972, 977 (10th Cir. 2009) ("This circuit, as well, had acknowledged the implied waiver of attorney-client privilege that arises when a party puts his counsel's advice in issue"); In re Lott, 424 F.3d

10

446, 452-53 (6th Cir. 2005) ("The privilege may be implicitly waived by claiming ineffective assistance of counsel <u>or by otherwise raising issues regarding counsel's performance</u>") (emphasis added); <u>Bittaker v. Woodford</u>, 331 F.3d 715, 719 (9th Cir. 2003)("[P]arties in litigation may not abuse the privilege by asserted claims the opposing party cannot adequately dispute unless it has access to the privileged materials."); <u>U.S. Fire Ins. Co v. Asbestospray, Inc.</u>, 182 F.3d 201, 212 (3d Cir. 1999) ("A party may waive attorney-based privileges by asserting claims or defenses that put his or her attorney's advice in issue in the litigation") (internal quotation omitted); <u>Garcia v. Zenith Electronics Corp.</u>, 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995) ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation.") The principle can be traced all the way to an 1888 Supreme Court opinion holding that, "When Mrs. Blackburn entered upon a line of defense which involved transpired between herself and [her lawyer], she waived her right to object to his giving his own account of the matter." <u>Hunt</u>, 128 U.S. 464 (1888) (quoted in <u>Pinson</u>, 584 F.3d at 977, and <u>Bittaker</u>, 331 F.3d at 719). Modern courts have sometimes referred to this as a general "fairness principle." See <u>Bittaker</u>, 331 F.3d at 719.

Even though Juan says that he has not challenged the effectiveness or the competency of his former counsel, his

11

arguments necessarily mean that he is calling into question both Jones' competence and the adequacy of his representation because a lawyer must be sure that his client knows and understands the meaning of the documents that the lawyer advises the client to sign. Nowhere is that obligation more important than when the client is pleading guilty to a crime, forfeiting his rights, and confessing to details of his criminal behavior.

Without the requisite inquiry and the attendant waiver of the attorney-client privilege, the fairness principle cannot be satisfied. If Juan wishes to maintain his argument of "utter confusion" as part of his opposition to the Government's motion *in limine*, as well as his own (bearing in mind that he is not obligated to do so, see Bittaker, 331 F.3d at 720) then the Motion to Compel must be granted, and Jones' testimony must be heard.

This is not the end of the analysis, however, for this Court "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." Id.; See also Greater Newburyport Clamshell Alliance v. Pub. Serv. Co., 838 F.2d 13, 22 (1st Cir. 1988) (holding that the appellant need reveal only that information "for which defendants have so far shown a true need and without which they may be unfairly prejudiced in their defense"). To rebut a defense of "utter confusion" about the content of the Statement and the implications of paragraph 14 of the Agreement, the Government is entitled to elicit testimony from

12

the Juan's former counsel on those issues.[2] The Government, however, has also argued that the waiver should extend to any protestation of innocence made by Juan to his former counsel and any substantive defenses that were discussed by Juan and former counsel. See Motion to Compel, Docket No. 58 at 7. The only explanation offered for this expansive request is the Government's own characterization of Juan's position as an allegation "that [the Defendant] was advised to plead guilty to a crime that he did not commit." Id. at 3. The Court finds that framing of the issue to be overly broad; the Government can adequately respond to Juan's claims of "utter confusion" without any testimony about possible defenses or potential claims of innocence.

Finally, at this time, Juan's implied waiver of attorney-client privilege extends only to the issue of whether the Statement and the plea colloquy are admissible at trial, and so is only applicable to the pending motions *in limine*. Testimony by

---

[2] The Virginia Rules of Professional Conduct do not prevent Juan's former defense counsel from testifying. Virginia State Bar Rules of Professional Conduct, Rule 1.6(b) states that "To the extent a lawyer reasonably believes necessary, the lawyer may reveal... (2) such information to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, <u>or to respond to allegations in any proceeding concerning the lawyer's representation of the client.</u>" (emphasis added). Rule 1.6, Comment 10 states that "[w]here a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonable believes necessary to establish a defense." Virginia State Bar Rules of Professional Conduct, Rule 1.6(b), Cmt. 10.

13

Juan's former counsel will be admissible at trial only if Juan again either expressly or impliedly waives the attorney-client privilege by making a similar argument at that time. The Ninth Circuit adopted this "narrow waiver rule" in <u>Bittaker</u>, stating that "a narrow waiver rule--one limited to the rationale undergirding it--will best preserve the...vital interest in safeguarding the attorney-client privilege in criminal cases, thereby ensuring that...criminal lawyers continue to represent their clients zealously." <u>Id.</u> at 722. The court thereafter recognized an implied waiver of attorney-client privilege for litigation of an Ineffective Assistance of Counsel claim, but declined to extend that waiver to a potential second criminal trial. <u>Id.</u> The Fourth Circuit has endorsed the Ninth Circuit on this point. <u>See</u> <u>U.S. v. Nicholson</u>, 611 F.3d 191, 217 (4th Cir. 2010)(quoting <u>Bittaker</u>, 331 F.3d at 722-23).

## CONCLUSION

For the forgoing reasons, the Defendant's MOTION TO COMPEL DISCLOSURE OF INFORMATION FROM FORMER DEFENSE COUNSEL (Docket No. 58) will be granted, conditioned upon the Defendant's maintenance of his current arguments in the pending motions *in limine*.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 29, 2014